1             **UNITED STATES DISTRICT COURT**

2              **FOR THE DISTRICT OF ARIZONA**

3                   _____

4   **United States of America,**            )
                                          )
5                     Plaintiff,          )    **CR 10-00400-PHX-DGC**
                                          )
6           vs.                           )    Phoenix, Arizona
                                          )    February 9, 2011
7   **Janice Sue Taylor,**                    )
                                          )
8                     Defendant.          )
    _____)

9

10

11

12

13

14         **BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

15            **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

16                  <u>**STATUS CONFERENCE**</u>

17

18

19

20

21  Official Court Reporter:
    Patricia Lyons, RMR, CRR
22  Sandra Day O'Connor U.S. Courthouse, Suite 312
    401 West Washington Street, SPC 41
23  Phoenix, Arizona  85003-2150
    (602) 322-7257
24
    Proceedings Reported by Stenographic Court Reporter
25  Transcript Prepared with Computer-Aided Transcription

15:30:55  1                    **A P P E A R A N C E S**

          2

          3    For the Government:

          4              U.S. Attorneys Office
                         By:  **FRANK T. GALATI,** ESQ.
15:30:55  5              By:  **JAMES R. KNAPP,** ESQ.
                         40 North Central Ave., Ste 1200
          6              Phoenix, AZ  85004

          7

          8

          9    For the Defendant:

15:30:55 10              In Propria Persona
                         By:  **JANICE SUE TAYLOR,** ESQ.
         11              3341 Arianna Court
                         Gilbert, AZ  85298
         12

         13

         14    Shadow Counsel for the Defendant:

15:30:55 15              Federal Public Defender's Office
                         By:  **SUSAN E. ANDERSON,** ESQ.
         16              850 W. Adams St., Ste 201
                         Phoenix, AZ  85007

         17

         18

         19

         20

         21

         22

         23

         24

         25

**P R O C E E D I N G S**

15:30:55    1

2

3          THE COURTROOM DEPUTY:  Criminal case 10-400, United

4   States of America versus Janice Sue Taylor.  This is the time

15:37:11    5   set for status hearing.

6          MR. GALATI:  Your Honor, Frank Galati and James Knapp

7   for the United States.

8          THE COURT:  Good afternoon, counsel.

9          MS. TAYLOR:  Janice Sue Taylor.

15:37:24   10          THE COURT:  Good afternoon, Ms. Taylor.

11          MS. ANDERSON:  Afternoon.  Susan Anderson present as

12   advisory counsel.

13          THE COURT:  All right.  Good afternoon, Ms. Anderson.

14          This is our first hearing in this case.  As you all

15:37:35   15   know, this case was transferred to me because Judge Murguia

16   has been appointed to the Court of Appeals and so her cases

17   have been reassigned, and this one was reassigned to me by

18   random draw.

19          I've gone back and I've looked over the docket in the

15:37:53   20   case to get some idea of what's happened up until now and I've

21   also read the transcript of the hearing that happened on

22   January 12th, which I think was your last hearing in front of

23   Judge Murguia.

24          At that hearing she set a trial date of March 15th

15:38:09   25   that we'll talk about in a moment.  She made clear that there

15:38:13  1    were not to be other motions filed, that the deadline for

        2    filing motions had passed, although there were a couple of

        3    motions, Ms. Taylor, that you had filed that she said would be

        4    completed.  And she set a deadline for submitting things like

15:38:30  5    voir dire and jury instructions and for a final pretrial

        6    conference.

        7            I think what I would like to do first is talk to you

        8    about the motions that are pending.  There is a motion to

        9    quash a subpoena that the government filed.  The subpoena that

15:38:55 10    you had filed, Ms. Taylor, asked for the individuals who had

       11    calculated the tax liabilities, and you indicated, counsel, at

       12    the hearing before Judge Murguia that that was likely an

       13    individual named Cheryl Bradley, that she would be at trial,

       14    and you'd arrange an interview if Ms. Taylor wanted an

15:39:18 15    interview.  Can you tell me what happened on that issue?

       16            MR. GALATI:  We expect Ms. Bradley to be our witness.

       17    Not that "we expect," she will be.  Unless something unforeseen

       18    happens.

       19            What we said to Judge Murguia was we would inquire to

15:39:31 20    Ms. Bradley if she would submit to an interview.  And

       21    Mr. Knapp and I just discussed this before you came in.

       22    Neither of us knows the result of the inquiry that we believe

       23    our agent made of her.  We will do that in the next day if we

       24    haven't done it already.  I apologize for not having that on

15:39:48 25    the tip of my tongue here.

15:39:50   1          THE COURT:  All right.  But you do anticipate having

2    her at trial; is that right?

3          MR. GALATI:  Yes.  She will be a witness, Your Honor.

4          THE COURT:  Ms. Taylor, at the hearing on January 12,

15:40:01   5    Judge Murguia indicated that if you wanted to respond to the

6    motion to quash you should do so by the 19th of January.  You

7    didn't file anything in response, so I assume that was because

8    the government had indicated Ms. Bradley would be at trial.

9          MS. TAYLOR:  No.  I had talked to them on the day of

15:40:19  10    the appearance here and they said that they would ask her if

11    she would meet with me, and so I was kind of just waiting for

12    their response back.  That's why I didn't respond to anything.

13          THE COURT:  Okay.  Well, I think the subpoena in the

14    form that it was prepared where it was served on the

15:40:37  15    prosecutors is not an appropriate form of a subpoena.

16          MS. TAYLOR:  Well, I didn't know her address or how to

17    serve her.

18          THE COURT:  I understand that.  Typically what you can

19    do is you can subpoena somebody to come to trial.  Obviously,

15:40:50  20    you won't need to do that because Ms. Bradley will be at trial.

21    As to whether or not Ms. Bradley will agree to interview, they

22    will get back to you on that.  But in terms of the subpoena

23    itself, because of the form being on the prosecutors, I'll

24    grant the motion to quash the subpoena.  That doesn't mean she

15:41:14  25    won't be at trial.  She will be.

15:41:15   1       If you want to call her as a witness or cross-examine

2    her, you will have the right to do that.  If she agrees to be

3    interviewed you'll be able to do that before trial as well.

4    If she doesn't agree to be interviewed and you think there's

15:41:25   5    some step that you ought to take, I would encourage you to

6    talk to Ms. Anderson about what steps can be taken to get you

7    the information that you need, and she can advise you on that.

8    But the form of the subpoena was inappropriate, so I'm going

9    to grant the motion to quash.

15:41:42  10       You filed, Ms. Taylor, a motion that, as I understand

11   it, really had two requests in it.  It's the motion at Docket

12   177.  One request that you made was that the court dismissed

13   the indictment based on the failure of the court to comply

14   with the jury selection procedures in 28 U.S.C. section 1867.

15:42:16  15  Or alternatively you ask to be given information that will

16   identify for you the location of the individuals who sat on

17   the grand jury.

18       I have read your motion.  I have read the

19   government's response, and I have read the reply that you

15:42:33  20  filed, Ms. Taylor.

21       Do you have additional points you wanted to make on

22   that motion, Ms. Taylor?

23       MS. TAYLOR:  I would just like to -- well, if you've

24   read them all, you know what I would like.  I would like the

15:42:50  25  ZIP codes or counties or cities of each of the grand jurors to

15:42:57  1   be able to inspect where they live.  What county they live in,

2   what city they live in according to law.

3            THE COURT:  My understanding, Ms. Taylor, of your

4   reason for wanting that information is the argument that you've

15:43:08  5   laid out in these briefs that the grand jury members must

6   reside in the federal territory, that there's limited real

7   estate in Arizona that qualifies as a federal territory, and if

8   they don't live in that federal territory, if they live in

9   something that you consider not to be federal territory, then

15:43:27 10   in your view they're not properly on the grand jury.

11            MS. TAYLOR:  That is my contention.  That's what the

12   law says.

13            THE COURT:  Okay.  I understand that's your view of

14   the law.

15:43:39 15            Anything further, defense counsel -- I'm sorry,

16   government counsel wishes to say on this motion?

17            MR. KNAPP:  No, Your Honor.  We'll submit unless the

18   Court has any questions.

19            THE COURT:  I'm going to deny the motion and I'm going

15:43:52 20   to deny the motion both as to the motion to dismiss and the

21   motion for information about location of grand jurors, and I'm

22   going to do it for this reason:  The premise of the motion that

23   a grand jury member in the State of Arizona has to live in a

24   federal territory is not correct.  It's legally incorrect.

15:44:11 25            I understand you disagree with me on that,

15:44:13  1   Ms. Anderson -- Ms. Taylor, excuse me.  But my conclusion is

2   that it is incorrect.

3        28 U.S.C. section 1865(b) establishes the

4   requirements for jurors in the District of Arizona, or any

15:44:30  5   other district for that matter.  The juror must be a citizen

6   of the United States, 18 years old, and reside within the

7   District of Arizona for one year.

8        This court has promulgated the jury selection plan

9   that specifies those criteria.  Only people who meet those

15:44:47  10  criteria can be called to serve on either grand juries or

11  regular trial juries.

12        And therefore, I believe that all of the jurors are

13  qualified because they are residents of the District of

14  Arizona and that there is no legal requirement that they

15:45:04  15  reside in a federal territory as you have contended.  And

16  since that's the premise for the motion and for seeking the

17  information, I'm going to deny the motion.

18        There's a second motion pending that you filed --

19        MS. TAYLOR:  Your Honor, may I say something, please?

15:45:22  20        THE COURT:  You may.

21        MS. TAYLOR:  In this -- in my beliefs and reading the

22  organic laws of the United States of America, I have looked up

23  in Bouvier's -- Bouvier's?  However you pronounce that -- and

24  it gives the definition of "district" to be construed to be --

15:45:44  25  to mean territory.

15:45:47  1          Also, in Ballentine's, the "district" means a word of

       2   variable meaning in the law, a portion of the state with

       3   limits set by law for the government purposes.

       4          "Territorial" in Ballentine's means pertaining or

15:46:02  5   belonging to a territory of the United States.

       6          And with that in mind, it appears to me that the

       7   territorial composition as stated in 28 chapter 5, 81 through

       8   131, is definitely speaking of the territorial composition

       9   that is comparable to what they did in 1945.  Which would lead

15:46:30 10   only to the states that are -- the states or districts or

      11   territories that are federal because the United States is

      12   owned by the United States of America as far as corporation is

      13   concerned and it also only has jurisdiction only over the

      14   federal territory of the United States of America.  The United

15:46:56 15   States of America only has jurisdiction over that.

      16          And so what -- I don't see how it can be -- have any

      17   other meaning.  Because the only thing that was in comparison

      18   with the two territories, which is Hawaii and Alaska, and the

      19   other one, the District of Columbia, and any of the other

15:47:21 20   territories, only thing those had in common with the states

      21   was the federal territory.  So it had to be the federal

      22   territory they were talking about.

      23          THE COURT:  I understand that that is your belief and

      24   that is the argument you've made.  I disagree with it.  It is

15:47:37 25   not a correct interpretation of the law, in my view.  I believe

15:47:42  1    the District of Arizona is the district --

2              MS. TAYLOR:  Okay.

3              THE COURT:  -- that covers the State of Arizona.

4    That's where the jurors need to be from under 28 USC 1865(b),

15:47:54  5    and they are, so I'm going to deny the notion.

6              Now, the next motion you filed, Ms. Taylor, is the

7    motion to dismiss for lack of *in personam* jurisdiction.  This

8    is Docket 179.  You filed a lengthy motion and lengthy

9    attachments.  The government filed a response at Docket 187,

15:48:18 10    and you filed a reply with lengthy attachments at Docket 194.

11             I have read the motion, the response, and the reply.

12             Do you have additional arguments you wish to make on

13   that motion, Ms. Taylor?

14             MS. TAYLOR:  Well, I would like to have the

15:48:39 15    prosecutors or you, whoever is supposed to be in charge of

16   doing that, explain -- I have tried to explain to the best of

17   my ability as I understand the law the difference between the

18   United States of America and the United States.  I am under the

19   impression that attorneys here believe that they're one in the

15:49:02 20    same.  Perhaps they could give me some enlightenment to the

21   difference between them.  Or why --

22             THE COURT:  No, the purpose of this hearing,

23   Ms. Taylor, is not for your enlightenment, it's for you to make

24   legal arguments.  Do you have legal arguments in support of the

15:49:17 25    motion at Docket 179 besides those you laid out in your motion

61

15:49:27  1    and reply?

2            MS. TAYLOR:  I do have legal arguments that are in the

3    Constitution.  I have legal arguments.  But they're in here.  I

4    mostly put all of them in here.

15:49:34  5            THE COURT:  It was very thorough.  You spent a lot of

6    time typing it.

7            MS. TAYLOR:  Thank you.

8            THE COURT:  Okay.  So I take it you don't have

9    additional legal arguments that you wish to make today?

15:49:43 10            MS. TAYLOR:  No, I believe that's all.

11            THE COURT:  Okay.

12            MS. TAYLOR:  I appreciate you taking the time to read

13    it.

14            THE COURT:  You're welcome.  I was impressed that you

15:49:50 15    even found comments made at Duke Law School by Judge Sotomayor

16    some years ago.

17            Do the prosecutors have any additional oral

18    arguments?

19            MR. KNAPP:  Not unless the Court has questions, Your

15:50:05 20    Honor.

21            THE COURT:  All right.

22            There's much in here that is argued by Ms. Taylor.  I

23    think the bottom line are her arguments that she is not

24    subject to the income tax statutes of the United States; that

15:50:26 25    she is not subject to the jurisdiction of the IRS or the

15:50:31   1    jurisdiction of this court if the tax code is properly

2    construed; and that in fact the definitions would limit

3    citizens to places like Puerto Rico or other territories.

4    There are other arguments concerning the in personam

15:50:50   5    jurisdiction of this court over Ms. Taylor.

6         I'm going to deny the motion.  I believe these

7    arguments have been clearly rejected by all of the federal

8    courts that have addressed them, including the Ninth Circuit

9    Court of Appeals in *United States versus Hanson.*  Which is

15:51:06  10    H-A-N-S-O-N, 2F.3d 942; and United States versus Studley,

11    S-T-U-D-L-E-Y, 783 F.2d 934.  Those are both Ninth Circuit

12    decisions.

13         There are a number of other cases from other circuit

14    courts and district courts that have rejected these arguments,

15:51:27  15    and I do not believe the arguments are well taken, therefore,

16    I will deny the motion to dismiss.

17         Let's talk for a minute about the trial date.  Judge

18    Murguia set the trial in this case for March 15th.

19    Unfortunately, that does not work on my calendar.  I have

15:51:56  20    another trial that week and another -- actually I'm finishing

21    a civil trial on the 16th, but I couldn't start one, a

22    criminal trial, on that 15th because I start another criminal

23    trial on the 17th.  I'm booked the last week -- the next to

24    last week and last week of March.  And so I need to look at

15:52:14  25    April for a time to set this trial.

13

15:52:20  1          What I want to do is ask this question:  Mr. Galati

2     and Mr. Knapp, you indicated in the hearing with Judge Murguia

3     that you thought the government's case would take about five

4     days.  Is that correct still?

15:52:32  5          MR. GALATI:  Yes, Your Honor.

6          THE COURT:  All right.  Ms. Taylor, do you have a

7     sense for how much trial time you will be taking for purposes

8     of scheduling this trial?  In terms of your defense.

9          MS. TAYLOR:  Well, Your Honor, I plan on appealing

15:52:46 10    this and I plan on appealing it all the way up to the Supreme

11    Court if necessary.

12         THE COURT:  I understand that.  What I was asking was

13    not your future plans, but for purposes of the trial that will

14    be held in this courtroom, do you have a sense for how much

15:53:02 15    time you will need for your defense after the government rests?

16         MS. TAYLOR:  Well, I don't see how you can take me to

17    trial until this is resolved.  This is my liberty and my

18    rights.  I don't see how you can force me into a trial without

19    having it being resolved.  Your opinion and my opinion are

15:53:21 20    different on this issue.  However, I'm allowed to go to appeals

21    to have a higher court look at it and see exactly if I'm

22    eligible or if I'm able to -- I should be able to question the

23    grand jury.

24         THE COURT:  I understand you disagree with my views,

15:53:44 25    and you will have an opportunity to appeal them after the final

164

15:53:48   1   judgment is entered in this case.  The final judgment will be

        2   entered after trial, so we are --

        3            MS. TAYLOR:  How can --

        4            THE COURT:  -- go to trial --

15:53:54   5            MS. TAYLOR:  Excuse me, Your Honor.  How can you take

        6   me to trial without having a qualified jury list?

        7            THE COURT:  Well, we do have a qualified jury list.  I

        8   ruled against you on that.  So we will be going to trial and we

        9   will be going to trial in the month of April.  So for purposes

15:54:07  10   of scheduling, the question I have is how much time do you

       11   think you'll need in your defense?

       12            MS. TAYLOR:  Well, I will need, if it goes to trial, I

       13   have been talking to two very prominent attorneys and they will

       14   need time probably to look at it is what they have told me.

15:54:26  15            THE COURT:  What are they going to be doing?

       16            MS. TAYLOR:  They will be representing me.  I'm not

       17   going to be representing myself in any trial.

       18            THE COURT:  Well, you've indicated in this case

       19   throughout that you are representing yourself and Judge Murguia

15:54:39  20   gave you very thorough warnings about that that you

       21   acknowledged and said you wanted to represent yourself.

       22            MS. TAYLOR:  I said originally I would be representing

       23   myself while I'm looking for an attorney.

       24            THE COURT:  Well, Judge Murguia indicated, Ms. Taylor,

15:54:51  25   back on January 12th that she was not going to delay the trial

15:54:56  1    while you found an attorney.  I'm not going to either.  We're

2    not going to postpone this trial while you search for an

3    attorney.  We're going to trial in April.

4        MS. TAYLOR:  Well, I have two attorneys already lined

15:55:06  5    up, but I don't know if they can come in April or not.

6        THE COURT:  Well, we're going to trial on the date

7    that I set for trial.  And you've chosen to represent yourself

8    and you will represent yourself at trial if you don't have

9    lawyers to represent you at that point.  But if you get a

15:55:20 10    lawyer who comes in to represent you and he asks for a

11    continuance of the trial date, I'm going to say no.  So as you

12    talk to these lawyers, they need to understand if they're going

13    to represent you they need to be ready on the day we go to

14    trial.

15:55:35 15        Now, I'll ask you one more time:  Do you have a sense

16    for how much time you'll need for your defense?  If you don't,

17    that's fine, but if you do, I'd like to factor it in in terms

18    of the calendar days we set aside.

19        MS. TAYLOR:  I would assume maybe five days also, more

15:56:16 20    than theirs.  At max.

21        THE COURT:  Do you have a sense for what you're going

22    to be doing during those five days?  Do you have a long list of

23    witnesses you're going to call?

24        MS. TAYLOR:  I do.

15:56:28 25        THE COURT:  These will be witnesses on the issues the

15:56:30  1   government's presenting?

2          MS. TAYLOR:  Right.

3          THE COURT:  So, for example, I assume, although I

4   haven't heard from the government yet, I assume they're going

15:56:36  5   to present witnesses to establish the fact that you received

6   income during certain years and to establish the fact that you

7   didn't file tax returns.  Is it your intent to have witnesses

8   that will respond to that and say, no, you didn't receive

9   income?  Or do you know?

15:56:53  10          MS. TAYLOR:  I'm not sure quite what they will respond

11   to at this time because I don't know exactly what they're going

12   to ask.

13          THE COURT:  Okay.

14          Give me just a minute to look at the calendar.

15:58:41  15          All right.  What I would like to do -- Mr. Galati,

16   did you want to say something just then?  You looked like you

17   were about to stand up.

18          MR. GALATI:  Your Honor, I just -- I do have a trial

19   set in April I wanted to talk to you about.

15:58:54  20          THE COURT:  Go ahead and tell me what the issue is.

21          MR. GALATI:  On April the 5th I have two trials set in

22   Judge Bolton's court.  Each of them is a tax case.  Each of

23   them -- same defendants.  I will, for shorthand, call that

24   defendant also a tax protestor.  She's in custody.  Has been

15:59:14  25   since last summer.  The first -- the tax case is from 2006.

15:59:19  1    She absconded for four years.  She was picked up last summer.

        2    She was charged with failure to appear.  So those are the two

        3    cases.  Judge Bolton said it will go to trial April 5th because

        4    this lady's been in custody since last summer.

15:59:32  5            And what I expect there is a minimum of three days --

        6    two days, three days, and a maximum of week and a half.  I

        7    expect them to be tried back to back, unless, to be as candid

        8    with you as I can without being in concrete about it, if we

        9    try the failure to appear case first and it goes one way, the

15:59:56 10    second case may not get tried at all if I get permission from

       11    the higher-ups concerning that.  But that case is going on

       12    April the 5th.

       13            THE COURT:  Well, I was about to suggest we start this

       14    trial on April 12th, which is the following Tuesday.  I guess

16:00:15 15    that is problematic for you because of the possibility of that

       16    case going more than a week?

       17            MR. GALATI:  Right now I would say it is problematic.

       18    It might not be if only one of those two cases gets tried.  If

       19    the two-day failure to appear case goes the I would expect it

16:00:38 20    to be and the hierarchy in my office and above in Washington

       21    says it's all right not to try the other case, then I won't.

       22            THE COURT:  But you won't know that until that week,

       23    right?

       24            MR. GALATI:  I guess that's correct, Your Honor, yes.

16:00:55 25    And the reason why -- if I might continue, I apologize -- the

16:00:57  1    reason why that case got put in -- it was Judge Bolton's

2    preference to try it in May.  I'm going to be gone in May.  I'm

3    going to be out of the country in May and so she put it April

4    the 5th.  That's where I am.  And if we need to do something to

16:01:12  5    accommodate the Court, we'll do it, of course, but --

6          THE COURT:  All right.  What about if we were to start

7    this trial on April 19th, setting aside the days of the 19th,

8    which is a Tuesday, through the 22nd of that week, and then the

9    following week the 26th through the 29th.  So we'd have a total

16:02:38  10    of eight trial days blocked out on the calendar and it would be

11    Tuesday through Friday on each of those weeks.

12          MR. GALATI:  That should work for us, Your Honor.

13          THE COURT:  Ms. Taylor, are you available on those

14    days?

16:02:57  15          MS. TAYLOR:  I believe so.

16          THE COURT:  Okay.

17          All right, what I'd like to do, then, is set the

18    trial for those days, to start on April 19th.  Let me check

19    one other matter before we do that.

16:03:13  20          (The Court and the courtroom deputy confer.)

21          THE COURT:  All right.  What I'd like to do --

22    Ms. Taylor, did you want to say something?

23          MS. TAYLOR:  Yes, Your Honor.  Could I -- do I have to

24    actually confirm those dates right now?  Because I don't have

16:03:38  25    my calendar here with me and I do go play in church groups and

16:03:42   1   I'm not sure if any one of those dates have got me booked or

            2   not.

            3           THE COURT:  When you say you play in church groups,

            4   what do you mean by that?

16:03:49   5           MS. TAYLOR:  I play.  I play music in the church

            6   groups.  I'm part of their choirs.  I'm kind of the lead,

            7   actually.

            8           THE COURT:  Do you travel?

            9           MS. TAYLOR:  From churches around here.  Local

16:04:01  10   churches.

           11           THE COURT:  And would those be during the week

           12   usually?

           13           MS. TAYLOR:  Sometimes they are.  We have a revival

           14   coming up and I'm not sure what date it is.  I didn't bring my

16:04:10  15   calendar, so I don't know exactly.

           16           THE COURT:  Okay.  Well -- just one minute.

           17           (The Court and the courtroom deputy confer.)

           18           THE COURT:  Lisa informs me the speedy trial clock

           19   runs on April 19th.  So we need to start trial that day.

16:04:35  20           Do you understand what that means, Ms. Taylor, the

           21   speedy trial --

           22           MS. TAYLOR:  Yes.

           23           THE COURT:  -- requirement?

           24           We need to start this trial by the 19th.  We also

16:04:45  25   need to start it for the reason that if the prosecutor is not

16:04:47  1    available in May, we wouldn't be able to try this case until

2    the summer, which I do not want to do.  So we will set it for

3    the 19th through the 22nd, and 26th through 29th.

4         Now, if you find, Ms. Taylor, there's a problem with

16:05:05  5    the church event you're involved in, what I would suggest you

6    do is get one of the two assistant U.S. attorneys on the phone

7    and call my office and let's about it.  It may be we can work

8    around a particular event if you have one during that two

9    weeks and I'll try to accommodate it.

16:05:23  10    But I'm setting aside eight days because of the fact

11    that you believe you're going to present some significant

12    defense.  My experience is that trials usually take less time

13    than lawyers estimate.  So with the government estimating five

14    days and you estimating five days, I'm thinking we can do it

16:05:40  15    in eight rather than ten.  So I'm setting aside eight days.

16    My point is we really need that time, but if there's

17    flexibility that will allow us to accommodate your

18    involvement, we can do it.  I mean, for example, if it's an

19    evening performance and you need to leave trial by 4 o'clock

16:05:56  20    some day rather than later, we'll adjust the schedule.

21         MS. TAYLOR:  I appreciate that.

22         THE COURT:  I'd like to set a final pretrial

23    conference in this case for 2 p.m. on Friday, April 1st, if

24    that works.  Does that work for government counsel?

16:06:41  25         MR. GALATI:  Yes, Your Honor.

16:06:42   1          THE COURT:  How about for you, Ms. Taylor?

           2          MS. TAYLOR:  Yes.

           3          THE COURT:  Now, the final pretrial conference will be

           4    the conference at which we just cover the final issues for

16:06:53   5    trial.  I will give you at that conference, for example, the

           6    proposed voir dire questions for the jury, we'll talk about the

           7    length of trial, we'll make sure we've got witness lists.  I'll

           8    give you preliminary jury instructions at that final

           9    conference.  It won't be long, but it will be just to make sure

16:07:15  10    everything is set for the trial to begin on the 19th.

          11          The order that Judge Murguia had previously entered

          12    called for each side to submit proposed voir dire and jury

          13    instructions by this Friday, February 11.  I think the

          14    government's already submitted some, if I'm -- or did you say

16:07:36  15    you were going to do it by this Friday?

          16          MR. GALATI:  We're prepared to do it.  We sent them

          17    over to the defense last week.

          18          THE COURT:  Okay.  We can extend that out a little bit

          19    because we're extending the trial date.  So what I'll do is

16:07:48  20    move that date for submitting voir dire and jury instructions

          21    to March 11.  So that is about a month extension.

          22          Ms. Taylor, do you understand what I mean when I say

          23    voir dire and jury instructions?

          24          MS. TAYLOR:  Ms. Anderson has been trying to explain

16:08:17  25    that to me.

16:08:18    1          THE COURT:  She's a good resource.  She'll be able to

            2    help you understand what those are and how they're used.  She's

            3    tried a case in this court, so she understands the practices I

            4    follow, so she can help you on all of that.

16:08:31    5          All right, do counsel for the government have other

            6    matters you would like to raise?

            7          MR. GALATI:  Your Honor, we would like, if you would,

            8    please, if you could set a deadline for disclosure of any kind

            9    of expert witness that the other side might have.  We'll

16:08:53   10    certainly -- we've sent them a witness list of ours already and

           11    we'd like the same, if possible.

           12          THE COURT:  Do you anticipate you'll be using an

           13    expert witness in the case?

           14          MS. TAYLOR:  I do.

16:09:06   15          THE COURT:  More than one?

           16          MS. TAYLOR:  Probably.

           17          THE COURT:  I think it is reasonable to give notice to

           18    the government of expert witnesses so they can prepare an

           19    expert on the topic if they decide to do it.

16:09:19   20          I think what I would normally do would be require

           21    that by the same date, March 11.  So that means you need to

           22    identify who you intend to call as experts and subjects on

           23    which they will testify and give that to the government, and

           24    then they have fair warning of what experts they might need.

16:09:39   25          I assume the government's disclosed any experts

23

16:09:41  1   you're going to use already.

2              MR. GALATI:  Yes, Your Honor, we have.

3              THE COURT:  You didn't get it?

4              MS. TAYLOR:  No, not yet.

16:09:52  5   THE COURT:  Would you make sure, counsel, Ms. Taylor

6       gets that disclosure.

7              MR. GALATI:  Yes.

8              THE COURT:  So we will set that date, March 11, as

9       well for the expert disclosures.  And I'm doing that with the

16:10:02 10  assumption that the government expert disclosures have been

11      made.

12             Anything else from government counsel?

13             MR. GALATI:  Your Honor, just to let you know,

14      certainly we will try to pare down our witness list.  And we

16:10:18 15  thought five days was a generous amount of time.  We'll do our

16      very best to try it in fewer days than that.

17             THE COURT:  All right.

18             Ms. Taylor, do you have other matters you would like

19      to raise today?

16:10:34 20  MS. TAYLOR:  Are you supposed to give me an appealable

21      order then?  Is this an appealable order you're giving me?

22             THE COURT:  No.  The final judgment in this case will

23      be appealable.

24             MS. TAYLOR:  So this means I can't appeal it until

16:10:46 25  after trial?

16:10:47  1          THE COURT:  Well, you can try, and Ms. Anderson can

2     talk to you about that.  There are rules in the federal system

3     about when appeals can be taken from nonfinal orders.  They're

4     call interlocutory orders.  That's a fancy legal word for an

16:11:02  5     order that's not final.  There are some limited circumstances

6     under which appeals are allowed.  But they're narrow.  They are

7     not allowed normally.

8          And the idea behind that law is simply that cases

9     shouldn't be appealed repeatedly to a Court of Appeals at

16:11:19  10    different stages in the case.  The case should be concluded

11    and then all issues appealed.

12         So in criminal cases the normal appeal occurs after

13    the final judgment.  And in a criminal case, if there's a

14    conviction it occurs after the sentence has been imposed.

16:11:34  15         But if you decide in consultation with Ms. Anderson

16    that you want to attempt an appeal, you've got the right to

17    attempt what you choose to do.  So I can't give you legal

18    advice on that issue.  But my view is that the orders that I

19    have entered and Judge Murguia has entered are interlocutory

16:11:54  20    orders.  They're not final judgments.

21         Did you have any other questions or matters you

22    wanted to raise?

23         MS. TAYLOR:  The other dates on the 22nd, those will

24    all be vacated, right?

16:12:19  25         THE COURT:  Right.  The existing trial date, the

16:12:22  1    final -- I'm sorry.  The trial date of March 15, the final

       2    pretrial conference of February 22nd, and the voir dire and

       3    preliminary instructions deadlines of this Friday will be

       4    vacated.  And these new dates will apply.

16:12:36  5              MS. TAYLOR:  All right.  I believe that's all I have.

       6              THE COURT:  Okay.  Okay, thanks very much.  We'll

       7    issue a minute entry on this.

       8              (End of transcript.)

       9                         * * * * *

# **C E R T I F I C A T E**

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 22nd day of February, 2011.

s/ Patricia Lyons, RMR, CRR
Official Court Reporter