1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

United States of America,                    )
                                             )
                    Plaintiff,               )        **CR 10-00400-PHX-DGC**
                                             )
        vs.                                  )        Phoenix, Arizona
                                             )        December 1, 2011
**Janice Sue Taylor,**                       )
                                             )
                    Defendant.               )
_____)

**BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**SENTENCING**

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 41
Phoenix, Arizona   85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared with Computer-Aided Transcription

**A P P E A R A N C E S**

For the Government:

        U.S. Attorney's Office
        By:  **JAMES R. KNAPP**, ESQ.
        40 North Central Ave., Ste 1200
        Phoenix, AZ  85004

For the Defendant:

        In Propria Persona
        By:  **JANICE SUE TAYLOR**, ESQ.
        3341 Arianna Court
        Gilbert, AZ  85298

**P R O C E E D I N G S**

08:31:58  1

2

3          THE COURTROOM DEPUTY:  Criminal case 2010-400, United

4    States of America versus Janice Sue Taylor, on for sentencing.

15:07:54  5          MR. KNAPP:  Good afternoon, Your Honor.  Jim Knapp

6    for the United States.  With me at the table is the case

7    agent, IRS Special Agent Dave Votaw.

8          THE COURT:  All right.  Good afternoon.

9          MS. TAYLOR:  Good afternoon.  For and on the record I

15:08:07 10    accept all official's oaths of office in this courtroom today.

11    Let the record show I conditionally accept these proceedings

12    today on proof of claim that I am not here today as the

13    paramount security interest holder in all property and

14    collateral, both registered and unregistered, appearing

15:08:24 15    especially, not generally, as the accommodation party for

16    defendant Janice Sue Taylor merely for the purpose to continue

17    the public proceedings in accordance with the record before

18    the Court for 30 days so that we can resolve the matter

19    privately.  I now move -- I now move this Court to continue

15:08:43 20    these public proceedings for 30 days.

21          THE COURT:  Ms. Taylor, is this -- well, you're

22    requesting, as I understand it, what you requested in your

23    written papers, which is you want a continuance so that you

24    have an opportunity to privately resolve this with the U.S.

15:09:00 25    government; is that correct?

15:09:02   1          MS. TAYLOR:  I conditionally accept that there is

           2   not -- upon proof of claim, that there is not a request before

           3   the Court to continue the public proceedings for 30 days

           4   pending completion of the start of the private administrative

15:09:14   5   process.  When completed and certified as a matter -- as a

           6   record, that there is not a good likelihood the matter will be

           7   set off, settled, and closed, making the purpose of

           8   plaintiff's offer moot, therefore I now move this Court to

           9   continue these public proceedings for 30 days in accordance

15:09:28  10   with the record before the Court, and my business here will be

          11   concluded.

          12          THE COURT:  All right.  What I understand you to be

          13   saying, Ms. Taylor, is that you want to continue this

          14   sentencing 30 days so that you can try to resolve the matter

15:09:41  15   privately with the government.

          16          I'm going to deny that request for the same reasons I

          17   denied it on Monday afternoon last week.  You've been

          18   convicted by a jury of these crimes and we're going forward

          19   with the sentencing.  There is no provision in the law for a

15:09:58  20   private resolution of that conviction and the government's

          21   already indicated that they are not interested in any sort of

          22   private resolution.  So we're going to go forward with

          23   sentencing.

          24          Ms. Taylor, I'm going to ask you to come forward to

15:10:11  25   this lectern, if you would, please.

15:10:20  1        All right.  As indicated, our purpose today is for a

2   sentencing in this case.  There was a determination of guilt

3   by virtue of a jury verdict in this matter, and on the basis

4   of the jury's verdict it is the judgment of the Court that

15:10:39  5   Ms. Taylor is guilty of evasion of assessment --

6            (Cell phone ringing.)

7        THE COURT:  Could we have that phone turned off,

8   please.

9            It is the judgment of the Court that Ms. Taylor is

15:10:49 10   guilty of evasion of assessment, in violation of 26 United

11   States Code Section 7201, as charged in Counts 1 through 4 of

12   the indictment, and also that she is guilty of willful failure

13   to file a tax return, in violation of 26 United States Code

14   Section 7203, as charged in Counts 5 through 8 of the

15:11:15 15   indictment.

16        Ms. Taylor, my understanding from the record is that

17   you received a copy of the presentence report in this case on

18   September 29th of 2011.  Is that correct?

19        MS. TAYLOR:  I conditionally accept your offer upon

15:11:32 20   proof of claim that, number one, you have the authority to

21   deny due process and equal protection under the law --

22        THE COURT:  Ms. Taylor.

23        MS. TAYLOR:  -- and on proof of claim you have

24   authority to proceed the commercial code of the state --

15:11:43 25        THE COURT:  Ms. Taylor, stop.  Ms. Taylor, stop.

15:11:45  1    This isn't the time for you to make an argument.

2          MS. TAYLOR:  Excuse me, Your Honor, I'm not making an

3    argument.

4          THE COURT:  Yes you are.  Please stop.  I'm going to

15:11:52  5    ask you the question again.

6          Is it correct that you received the presentence

7    report on September 29th of this year?

8          MS. TAYLOR:  I conditionally accept your offer upon

9    proof of claim that there is not a record before the Court to

15:12:06 10    continue these public proceedings.

11         THE COURT:  Ms. Taylor, are you going to respond to

12    that question?

13         MS. TAYLOR:  I conditionally accept your offer upon

14    proof of claim that you have the authority to deny due process

15:12:22 15    and equal protection under the law.

16         THE COURT:  All right, Ms. Taylor, I'm going to take

17    it as an indication that you are not going to respond to my

18    question.

19         On the basis of the motion that you filed at Docket

15:12:32 20    291 and the order that I entered at Docket 294, it is clear to

21    me that you received the presentence report on September 29th

22    of 2011.

23         You have not filed any written objection to the

24    presentence report.  Do you have any objection to the

15:12:51 25    presentence report?

15:12:54  1          MS. TAYLOR:  I conditionally accept your offer upon

2     proof of claim that there is not any record in opposition to

3     the record that is now before the Court to continue the public

4     proceedings for 30 days.

15:13:05  5          THE COURT:  All right, I'll take that as an

6     indication that you have no objection to the presentence

7     report.

8          MS. TAYLOR:  I conditionally accept your offer upon

9     proof of claim that you have the authority to deny due process

15:13:16  10    and equal protection under the law.

11          THE COURT:  Ms. Taylor -- Ms. Taylor, look at me for

12    a minute.  You've made that point clear on the record.  You

13    don't need to keep repeating it.  It's on the record.  It's on

14    the record two or three times now.  So we'll assume that's

15:13:31  15    your position throughout this proceeding.

16          MS. TAYLOR:  I conditionally accept your offer upon

17    proof of claim that you can presume anything on my behalf.

18          THE COURT:  Well, I don't know what that means, but

19    you're on the record.  We're going to go forward with this

15:13:47  20    hearing and I'm going to ask you not to say that again until I

21    give you an opportunity to state your position.

22          With respect to the presentence report, the

23    presentence report calculates the total offense level in this

24    case as an offense level of 28.  It calculates the criminal

15:14:09  25    history category as I.  That produces a sentencing range on

15:14:14   1   Counts 1 through 4 of 78 to 97 months, and on Counts 5 through

2   8 of 12 months on each count.

3          The range which is calculated by the presentence

4   report also produces a fine range of 15,000 to $150,000.

15:14:38   5          The restitution amount is determined in the

6   sentencing recommendation, that is page 13 of the presentence

7   report, as $2,367,372.

8          My understanding, Mr. Knapp, is that that number has

9   been recalculated as reflected in Exhibit B to your sentencing

15:15:00  10   memorandum to be $2,234,219; is that correct?

11          MR. KNAPP:  Sort of, Your Honor.  The actual -- the

12   actual federal tax loss that would drive restitution is

13   actually higher than that.  It's not completely clear from the

14   chart, but if you look to the total tax due and owing --

15:15:28  15          THE COURT:  What are you referring to, Mr. Knapp?

16          MR. KNAPP:  Your Honor, this is from the attached

17   chart from Document 303.

18          THE COURT:  So is this Exhibit B?

19          MR. KNAPP:  Correct, Your Honor.  Yes.  Sorry.

15:15:38  20          THE COURT:  Okay.

21          MR. KNAPP:  It notes the total tax due and owing, and

22   then it breaks out the state tax, which is $358,497.  And then

23   the total tax due and owing is listed as $3,025,285.

24          So the 2,234,219 that you mentioned is just for the

15:16:08  25   charged years.  It's actually higher than that, but we're fine

15:16:11  1    with anywhere around there for restitution, Your Honor.  We

2    can use the number in the proposed recommendation, we can use

3    the 2 million 234.  But the bottom line is the actual federal

4    loss is higher, it's approximately $2,600,000.

15:16:31  5    THE COURT:  You just lost me on that last statement.

6    Let me ask you a couple questions.

7    MR. KNAPP:  Yes, Your Honor.

8    THE COURT:  I can't see in your calculations in

9    Exhibit B the number that's on page 14 of the presentence

15:16:43  10   report for restitution amount.  That is $2,367,372.  I don't

11   see that anywhere in your chart.  So I assume we have a

12   recalculation in the chart of that amount.

13   MR. KNAPP:  That's correct, Your Honor.

14   THE COURT:  All right.

15:17:01  15   Are you seeking restitution on behalf of the State of

16   Arizona?

17   MR. KNAPP:  No, Your Honor.

18   THE COURT:  Okay.  So the restitution amount, then,

19   should be the amount at the bottom of the chart on Exhibit B,

15:17:12  20   which is $2,234,219.  Right?

21   MR. KNAPP:  Your Honor, we'll go with that.  For

22   clarity, we'll go with that.  My point was simply that there

23   are additional federal taxes at issue.  There's the

24   self-employment tax listed above, there's federal tax for

15:17:33  25   other tax years other than the charged years.  But I think

15:17:36  1  we're fine using this.  It's clean to just use the 2,234,219

2  number.

3         THE COURT:  Okay.

4         In addition to what I've indicated is the sentencing

15:17:46  5  range and the fine range and the restitution amount, which I'm

6  going to determine to be $2,234,219, as indicated on Exhibit B

7  to Docket 303, there is a special assessment of $100 for

8  Counts 1 through 4, which will total $400, and a special

9  assessment of $25 on each of Counts 5 through 8, which will

15:18:19  10  total $100, for a total of $500 in special assessments.

11        Ms. Taylor, I've kept you standing there for a

12  minute.  I want to ask Mr. Knapp a couple other questions.  If

13  you want to have a seat, you're welcome to do that while I ask

14  him those questions.

15:18:44  15        MS. TAYLOR:  Do I get to talk again?

16        THE COURT:  You do.  Absolutely.

17        MR. KNAPP:  Do you want me to approach, Your Honor?

18        THE COURT:  No, I can hear from you there, Mr. Knapp.

19        The question I want to ask, and the probation officer

15:18:56  20  may have some input on this as well, concerns the calculation

21  in the presentence report.  Let me find the right document.

22        The offense level calculation in the presentence

23  report is on page 6, and paragraph 16 calculates the base

24  offense level as 24, based on a federal tax owed of about 2.3

15:19:38  25  million, and we just adjusted that number to 2.2 million.

11

15:19:42   1   That produces an offense level of 22, not 24, as I read the

2   table at guideline section 2T4.1.

3       And you included a footnote in your sentencing

4   memorandum where you said that an offense level of 24 is the

15:20:13   5   correct calculation if you add in the state tax because when

6   you add the state tax it exceeds 2.5 million.

7       You didn't cite any authority for the proposition

8   that the tax loss that I am to take into account in table

9   2T4.1 includes state tax as well as federal tax, and I read

15:20:39  10   the notes to the preliminary guideline section where it talks

11   about tax loss, which is section 2T1.1, and it doesn't say

12   anything about counting state tax.

13       So the question I have for you is, what is the legal

14   basis upon which the government believes that I should include

15:20:59  15   the state tax amount in calculating the tax loss for purposes

16   of the guideline calculation?

17       MR. KNAPP:  There's a case, Your Honor, I noted it --

18   I cited it in my sentencing memorandum on page 3 at line 6,

19   *United States v Yip*, 592 F.3d 1032.

15:21:19  20       THE COURT:  Hold on just a minute, let me get to that

21   page.  I've got too many papers up here.

22       All right.  That's a Ninth Circuit case?

23       MR. KNAPP:  Yes, Your Honor.

24       THE COURT:  Okay.  So that's the basis for your

15:22:18  25   assertion I can count the state tax?

15:22:21 1        MR. KNAPP:  Yes, Your Honor.  And also, just to be

2    clear, as I tried to make clear from my footnote, I don't know

3    if I succeeded, the presentence report did note the total loss

4    of being over $3 million.  It just didn't list the full amount

15:22:33 5    in that particular paragraph dealing with the offense level.

6    So I didn't file any objections because I think the

7    presentence report is correct.  It's just that particular

8    paragraph dealing with the calculations only noted the federal

9    loss.

15:22:45 10        THE COURT:  Okay.

11        Does the probation officer agree with that?

12        PROBATION OFFICER:  Yes, Your Honor, I do.

13        THE COURT:  All right.  I'm just going to take a look

14    at that case in a minute after my law clerk prints it out.

15:23:13 15        And I take it the government concurs with the two

16    level upward adjustment for sophisticated means?

17        MR. KNAPP:  Yes, Your Honor.

18        THE COURT:  I will note that the comment to guideline

19    section 2T1.1 defines sophisticated means as especially

15:23:34 20    complex or especially intricate offense conduct pertaining to

21    the execution or concealment of an offense.  It goes on to say

22    that conduct such as hiding assets or transactions or both

23    through the use of fictitious entities, corporate shells, or

24    offshore financial accounts ordinarily indicates sophisticated

15:23:57 25    means.

13

15:23:58  1          In this case there was significant evidence during

2      the trial of the use of fictitious entities for purposes of

3      hiding assets, and so it's my conclusion that the

4      sophisticated means enhancement is warranted, as found in

15:24:13  5      paragraph 17.

6          The last question I had, Mr. Knapp, was with respect

7      to paragraph 20 of the presentence report, which is an upward

8      adjustment based on obstruction of justice.

9          Is there any particular conduct that the government

15:24:32 10      views as satisfying that requirement?  Or are you simply in

11      agreement with everything said in the presentence report?

12          MR. KNAPP:  Your Honor, I also cited -- well --

13      answer the question.  We do think that the obstructive conduct

14      during the years leading up to the charge alone would count,

15:24:50 15      and we cited both, again, *United States v Yip,* as well as

16      *United States v Hernandez-Ramirez*, and this is Footnote 1 on

17      page 2.

18          I think just Ms. Taylor's obfuscation and lies alone

19      to Ms. Bradley and to Revenue Officer Young that the Court

15:25:16 20      heard about at trial would justify the enhancement alone.

21          I don't have copies.  I'm not given copies of the CJA

22      Form 23, so I have to defer to the probation officer and the

23      Court on that.  But that also, as noted in *United States v*

24      *Hernandez-Ramirez,* actually, that would also warrant the

15:25:38 25      enhancements.  So I think both bases would satisfy the

standard.

THE COURT:  All right.  I understand that position.

Based on the evidence that I heard during the trial, it is clear to me that the defendant did interfere with IRS attempts to procure documents and records.  She submitted false 1099 forms with her income tax returns; she lied to the revenue agent when questioned about assets; and she did submit a fraudulent financial affidavit on CJA Form 23.

So my conclusion is that two levels should be added as in paragraph 20 because the defendant did willfully obstruct or impede or attempt to obstruct or impede the administration of justice.

All right.  I have read the sentencing memoranda, as I indicated.

Ms. Taylor, the documents that I read that you submitted include the document filed on November 16th titled Notice, Constructive Notice of Conditional Acceptance to Notice of Termination of Attorney.  I've read the document you filed on November 22nd titled Notice of Notice Forgive Me Request.  And I read the document you filed on November 28th titled Constructive Notice of Conditional Acceptance to Hearing Date -- Hearing Dated November 28, 2011.  So I have read all of those.

I have also read the document that was filed by Terry Major titled Rebuttal to Government's Sentencing Memorandum,

15:28:20  1   Document Number 299, and Judicial Notice, which I believe was

2   somewhat filed on your behalf.  So I have read those things,

3   as well as the government's memorandum and sentencing

4   memorandum.

15:28:36  5          Before we go on, let me just take a minute and look

6   at the *United States versus Yip* case that's been handed to me.

7          All right.  That case from the Ninth Circuit holds at

8   592 Fed 3d page 1040 as follows:  Unpaid state taxes may be

9   included in the calculation of tax loss whether or not the

15:29:46 10   statute of limitations prevents the state from prosecuting a

11   defendant for his violations of its tax laws.  The district

12   court properly included defendant's unpaid state taxes in its

13   computation of state -- I'm sorry -- of tax loss.  And this is

14   a January 2010 decision of the Ninth Circuit.

15:30:07 15          So it appears clear to me that state tax loss can be

16   included in the calculation.  And when it is, then a base

17   offense level of 24 is appropriate.  And therefore, the

18   guideline range of a total of 28 as the offense level with a

19   criminal history category I is correct, producing a sentencing

15:30:28 20   range of 78 to 97 months.

21          Mr. Knapp, why don't we start with the government's

22   position, if you would, please, on the appropriate sentence in

23   this case, and then, Ms. Taylor, I'll give you an opportunity

24   to state your views on that issue.

15:30:44 25          Go ahead, Mr. Knapp.

MR. KNAPP:  Your Honor, I think I tried to say

2   everything I wanted to say on behalf of the United States in

3   the sentencing memo.

4          The bottom line is that in this case, as in every

case, the Judge, the Court, is in the best perspective to

6   figure out what the most appropriate sentence is.  The

7   probation officer recommends 84 months.  We think that is a

8   reasonable recommendation.  We would agree with a sentence of

9   84 months.

What I noted in the presentence -- I'm sorry, the

11   sentencing memorandum is that there's been this issue kind of

12   floating around the whole time during this prosecution, which

13   is that she's already served some time for civil contempt

14   prior to the charges in this case, and arguably that's a

mitigating factor because she served some consequence for

16   somewhat similar conduct.

17          That's for different tax years than the ones charged

18   in the indictment and for the ones she faced at trial.  It's

19   also contempt in a civil case, and there is case law and other

resources, I cited those in the sentencing memorandum,

21   suggesting that that time spent on contempt should not be

22   credited against an ultimate sentence.

23          So I don't think the Court is obliged and I'm not

24   suggesting the Court should credit her in any way for that

time spent in custody on a civil contempt.  In many ways, that

17

15:32:13  1    would undercut the purpose of civil contempt because it would,

2    you know, take away that sanction that was used to try to get

3    her to follow the Court's orders, Judge Bolton's orders.  But

4    nevertheless I flag it because if the Court decides it does

15:32:28  5    want to take that into consideration and sort of informally

6    credit it through 3553, which I think the Court can do, I

7    would just recommend the Court go no lower than 60 months of

8    imprisonment.

9         Your Honor, I do want to note another thing, which I

15:32:44  10   flagged in the sentencing memorandum.  I can either -- well, I

11   should say -- I guess we're over this by now, but if the Court

12   has any lingering questions about the tax calculations,

13   Revenue Agent Bradley is here in the courtroom.  She can

14   explain anything about taxes.  I'm no tax expert.

15:33:02  15        I also have Agent -- Case Agent Votaw here.  I noted

16   in my sentencing memorandum that he can explain, and we can do

17   this through proffer or testimony, I've never done a proffer

18   at sentencing, so maybe it would be by testimony, but it would

19   be very brief, explaining the title transfer on the Escalade

15:33:18  20   and the real estate at Tate Road that I mentioned in my

21   sentencing memorandum.

22        THE COURT:  Well, I'll leave it to you if you want to

23   present that.

24        MR. KNAPP:  I think it's probably a good idea, Your

15:33:27  25   Honor, because I'm not aware of -- I've never done a proffer

18

15:33:30   1   at sentencing.  So it will be very brief, Your Honor, if I

2   could do that.

3          THE COURT:  All right.  That's fine.

4          Agent Votaw, we're going to have you testify on that

15:33:37   5   issue.  We're going to ask the probation officer to just step

6   into the jury box.

7          If you would come forward to be sworn as a witness,

8   please.

9          THE COURTROOM DEPUTY:  Please raise your right hand

15:33:45  10   to be sworn.

11          (Agent David Votaw was sworn.)

12          THE COURTROOM DEPUTY:  Please state your name and

13   spell your last name.

14          THE WITNESS:  David Votaw, V as in Victor, O-T-A-W.

15:34:10  15          MR. KNAPP:  May I approach the lecturn, Your Honor?

16          THE COURT:  You may.

17          MR. KNAPP:  Your Honor, I have two documents marked

18   as government's sentencing exhibits C and D.  I don't plan to

19   admit them, but I thought it would be helpful to have one in

15:34:25  20   front of the witness, and I have a copy on defendant's table

21   and I have a copy for the Court, if I may approach.

22          THE COURT:  Yes, you may.

23          And you do have copies of these in front of

24   Ms. Taylor; is that right?

15:34:53  25          MR. KNAPP:  Yes, Your Honor, I do.

19

15:34:54   1      THE COURT:  Okay.

2                **AGENT DAVID VOTAW,**

3   called as a witness herein, after having been first duly sworn

4   or affirmed, was examined and testified as follows:

15:34:54   5          D I R E C T   E X A M I N A T I O N

6   BY MR. KNAPP:

7   Q   Agent Votaw, you are a special agent for the Internal

8   Revenue Service; is that right?

9   A   Yes.

15:35:00  10   Q   And you're the same Agent Votaw who testified as the case

11   agent during trial in this case, right?

12   A   Yes.

13   Q   Are you familiar with -- take a look at what's been marked

14   and put in front of you in a folder marked Sentencing

15:35:10  15   Exhibit C.

16          Do you see that?

17   A   I do.

18   Q   What is it?

19   A   It's a certified copy of Oregon MVD records.

15:35:18  20   Q   And this is a copy of a certified copy.  Do you have the

21   actual certified copy somewhere in your records?

22   A   I do.

23   Q   This notes a vehicle with a license plate ending in CWT.

24   A 2007 -- is that Cadillac?

15:35:35  25   A   Yes.

```
15:35:36   1    Q    What do you know about this vehicle?

           2    A    I know it to be involved with Sue Taylor.

           3    Q    How do you know it to be involved with Sue Taylor?

           4    A    I've seen Sue Taylor in the car on several occasions.

15:35:50   5    Q    During the investigative stage or during the trial phase?

           6    A    Both.

           7    Q    Approximately how many times during the trial did you see

           8    Sue in -- Ms. Taylor, the defendant, in this vehicle?

           9    A    During the trial, at least five times.

15:36:01  10    Q    And this notes that -- this just lists registered owner

          11    Priscilla Robinson.  Do you know who that is based on your

          12    investigation in this case?

          13    A    That is Sue's daughter.

          14    Q    And what do you know about when this registration was

15:36:17  15    changed to Ms. Robinson?

          16    A    Looks like August of this year.

          17    Q    Who was it -- do you recall who it was registered to

          18    before Ms. Robinson?

          19    A    Yes.

15:36:28  20    Q    Who?

          21    A    It was an entity in which Sue's dad, William Petit, was

          22    trustee.

          23    Q    So before this was transferred to Ms. Robinson, it was

          24    held in some entity -- purportedly, on the registration, held

15:36:42  25    in some entity where the defendant's dad was the trustee?
```

15:36:46   1    A    That's correct.

2    Q    Have you seen other vehicles where the defendant's dad was

3    a trustee?

4    A    Yes.

15:36:53   5    Q    Is there a truck?

6    A    Yes.

7    Q    Tell me about the truck.

8    A    There's a 2005 F350 Ford truck.

9    Q    Have you seen that truck recently?

15:37:02   10   A    Yes.

11   Q    Where did you see it?

12   A    The courthouse, at Sue's house.

13   Q    Did you see it on the way up to court today?

14   A    Yes.

15:37:11   15   Q    Where did you see it coming from?

16   A    Casa Grande.

17   Q    Did you see it coming from a particular house in Casa

18   Grande?

19   A    1931 South Tate.

15:37:20   20   Q    All right, and that takes us to Sentencing Exhibit D.  Do

21   you recognize that?

22   A    Yes.

23   Q    I didn't include all the pages here.  Have you seen this

24   before?

15:37:30   25   A    I have.

15:37:30  1    Q    What is it?

2    A    This is a page off a warranty deed that was submitted to

3    Pinal County for recordation.

4    Q    And you have the full document and it's certified; is that

15:37:42  5    right?

6    A    That's correct.

7    Q    This is just the first page?

8    A    Yes.

9    Q    This references a property that was transferred from MMM

15:37:48  10   Land Trust to CG Mountain Sanctuary Trust?

11   A    Yes.

12   Q    Based on this document and your own review of other

13   records, do you know what real property this warranty deed

14   relates to?

15:38:02  15   A    Sue's property at 1931 South Tate.

16   Q    And that's the property where you saw the defendant coming

17   from today to come to court?

18   A    Yes.

19   Q    And during the investigative stage you also saw the

15:38:15  20   defendant -- well, you saw her vehicles around that house?

21   A    Saw her come from the house as well.

22   Q    And this transfer of title was in approximately August or

23   September of this year; is that right?

24   A    That's correct.

15:38:32  25   Q    Date on the document says August 29, and then actually

23

15:38:35  1    it's notarized I guess the 6th of September 2011; is that

2    right?

3    A    Yes.

4    Q    So both these events, the transfer of the registration and

15:38:44  5    the title to Tate Road were subsequent to the trial in this

6    matter, subsequent to the verdict in this matter; is that

7    right?

8    A    That's correct.

9         MR. KNAPP:  I have no further questions, Your Honor.

15:38:55 10         THE COURT:  Ms. Taylor, do you have any questions for

11    Agent Votaw?

12         MS. TAYLOR:  Do you want me to come up there?

13         THE COURT:  Yeah.  Please.  Or just stand up so we

14    can hear you speaking into the mike.

15:39:40 15         MS. TAYLOR:  Mr. Votaw, I conditionally accept your

16    offer to state that this car was titled to me upon proof of

17    offer that this title was proved to me.  Sorry.  Upon proof of

18    offer that this title to this car was in my name.

19         THE COURT:  You need to ask a question, Ms. Taylor,

15:40:15 20    if you want to question the witness.  Do you have any

21    questions for Agent Votaw?

22         MS. TAYLOR:  No, I don't.

23         THE COURT:  Okay.  Thank you.  You can step down.

24         Mr. Knapp, anything further from you?

15:40:28 25         MR. KNAPP:  Your Honor, I have a couple of

15:40:30 1    housekeeping matters, but that's it for the 3553 factors.

2    Only other thing -- and I can take up the housekeeping

3    matters, if that's all right, after this portion of the

4    hearing.

15:40:38 5         The only other thing I'd note is, as the Court can

6    probably see, in the back of the room there are number of

7    people from the Internal Revenue Service.  You may recognize a

8    couple who were here during the trial, who assisted in the

9    trial, couple who testified, others who've dealt with the

15:40:51 10   defendant over the years.  And just -- I hope the Court takes

11   that as a signal that defendant has been a thorn in the side

12   of the IRS for a number of years.

13        Nothing further, Your Honor.

14        THE COURT:  All right.  Thanks, Mr. Knapp.

15:41:04 15        Ms. Taylor, would you like to say anything before I

16   make a sentencing decision?

17        MS. TAYLOR:  Yes.

18        THE COURT:  Why don't you please do that.

19        MS. TAYLOR:  Your Honor, I conditionally accept the

15:41:26 20   offer upon proof of claim that I am not here in the capacity

21   as accommodation party for Sue Taylor the defendant for the

22   purpose previously stated and it's not the defendant that was

23   to be sentenced prior to the agreement between the parties to

24   continue this matter.  I conditionally accept your offer upon

15:41:47 25   proof of claim that there is any record in opposition to the

15:41:51   1   record that is now the latest before the Court to continue the

2   public proceedings for 30 days.  Therefore, I now move this

3   Court to continue these public proceedings for 30 days.

4        You have stated that you are denying my request; is

15:42:18   5   that not true?

6        THE COURT:  Correct.

7        MS. TAYLOR:  Okay.  I conditionally accept your offer

8   to -- upon proof of claim that you have the authority to deny

9   due process and equal protection under the law and upon proof

15:42:30   10   of claim you have authority to supersede the commercial code

11   of the state, and upon proof of claim that you have the

12   authority to supersede constitutional safeguards and

13   protections of liberty of contract, and upon proof of claim

14   this is not an obstruction of justice due process violation

15:42:51   15   substantive -- violating substantive procedural due process

16   and equal protection under the law.

17        And if you want to deny my right to provide the

18   remedy, let the record show that Judge Campbell is now

19   converted personally on all liabilities as surety for the

15:43:10   20   defendant.

21        Therefore, my business as the accommodation party is

22   done and I now move this Court to continue these public

23   proceedings in accordance with the record before the Court.

24   Therefore, my business will be concluded and I will be

15:43:25   25   leaving.

26

15:43:28   1          I conditionally accept upon proof of claim that if it

2     ever appeared in the past I ever consented to these

3     proceedings, I did not then and do not now give my consent to

4     these proceedings.

15:43:46   5          THE COURT:  Is there anything more you would like to

6     say, Ms. Taylor?

7          MS. TAYLOR:  One moment.

8          Yes.  I move upon proof of claim this request before

9     the Court upon -- upon proof of claim is there not a request

15:44:24  10     before the Court to continue these public proceedings for 30

11     days so we can resolve this matter?  And I move therefor --

12     therefore, I move the Court to continue these proceedings for

13     30 days.

14          THE COURT:  Is there anything else you would like to

15:44:47  15     say?

16          MS. TAYLOR:  No, Your Honor.

17          THE COURT:  Okay.  Thank you.

18          Why don't you return to your seat, if you would,

19     please.

15:44:58  20          To the extent, Ms. Taylor, that you just made another

21     request for a continuance of 30 days, I'm going to -- I'm

22     going to deny that request for the reasons that we previously

23     have denied the requested continuances.

24          In arriving at the sentence in this case, I am

15:45:16  25     required to consider the factors laid out in a federal statute

27

15:45:21 1   at 18 United States Code Section 3553(a).

2           The first category of factors I'm to consider are the

3   nature and circumstances of this offense.

4           The jury found, Ms. Taylor, that you were guilty of

15:45:38 5   tax evasion in Counts 1 through 4, and of willful failure to

6   file tax returns in Counts 5 through 8.

7           The government has presented evidence that the tax

8   loss in this case to the federal government exceeds $2.2

9   million.  And when the state taxes are taken into account, the

15:46:02 10  tax loss exceeds $3 million.

11          This is a very serious tax offense and the conviction

12  on all eight counts of the indictment I think attest to that

13  fact.

14          In addition, the evidence that was presented during

15:46:20 15  the course of trial made clear that this was not a casual or

16  incidental type activity.  This was a major, calculated effort

17  on your part to hide your assets from the government, to hide

18  significant amounts of money through the use of fictitious

19  entities, transfers to other individuals.  A very deliberate

15:46:45 20  effort to hide the assets.

21          MS. TAYLOR:  Your Honor --

22          THE COURT:  I'm now stating my reasons for the

23  sentence.

24          I'm also required under Section 3553(a) to consider

15:46:55 25  your history and characteristics.

15:46:58   1          You have no criminal history.  That's certainly

           2   relevant.  That's been taken into account in the guideline

           3   calculation where you have a criminal history category of I.

           4          But it's also clear to me from the evidence that was

15:47:12   5   presented at the trial that you have made no effort to pay

           6   taxes and in fact have actively avoided the payment of taxes

           7   since the late 1990s.

           8          I'm required by this statute to find a sentence that

           9   is sufficient but not greater than necessary to reflect the

15:47:35  10   seriousness of this crime, to promote respect for the law by

          11   and you by others, to provide a just punishment, to afford

          12   adequate deterrence to you and to others, and to protect the

          13   public from further crimes that you might commit.

          14          I believe all of those factors are relevant in this

15:47:54  15   case.  It is clear to me that you are not deterred in your

          16   efforts to avoid paying taxes, that there is no acceptance of

          17   responsibility for this criminal conduct, and therefore

          18   deterring you from committing further crimes as well as

          19   protecting the public fisc from such crimes are relevant, as

15:48:15  20   are the other factors identified in Section 3553(a)(2).

          21          I'm required as well to consider the sentencing

          22   guideline range, which in this case is 78 to 97 months, as has

          23   been calculated in the presentence report and as I have

          24   confirmed today.

15:48:36  25          And finally, the statute directs me to find a

29

15:48:40  1    sentence that will avoid unwarranted sentencing disparities.

2    The idea being that a person who commits this crime in one

3    part of the country should receive approximately the same sort

4    of penalty that a person who commits this crime in another

15:48:52  5    part of the country receives.  I believe the sentencing

6    guidelines help us accomplish that objective.

7             MS. TAYLOR:  Your Honor, may I speak?

8             THE COURT:  Well, go ahead.  You can say something if

9    you want, Ms. Taylor, before I announce the actual sentence.

15:49:12 10            MS. TAYLOR:  Okay.

11            THE COURT:  Go ahead.

12            MS. TAYLOR:  Okay.  I conditionally accept upon proof

13    of claim that my remedy is allowed for the defendant in

14    accordance with the Arizona statutes.  UCC-1-201(b)(32)

15:49:39 15    allows -- does not allow for a remedy, and I conditionally

16    accept that on proof of claim that it does not allow for a

17    remedy to be presented before this Court.  And therefore I now

18    move this Court to continue these public proceedings for 30

19    days so I can perfect my remedy.

15:50:16 20            THE COURT:  All right.  You've placed that on the

21    record.

22             It's my conclusion, having considered all these

23    factors that are set forth in Section 3553(a), that a sentence

24    at the low end of the guideline range of 78 months is

15:50:29 25    appropriate in this case.

15:50:31  1          That's a cumulative sentence that is arrived at by

2      applying some -- the sentence on some counts concurrently and

3      some consecutively.  I believe that a sentence at the low end

4      of the guideline range is sufficient but not greater than

15:50:46  5      necessary to accomplish the purposes of Section 3553(a)(2) for

6      this serious and complicated and very deliberate multi-year

7      tax fraud.

8          Therefore, pursuant to the Sentencing Reform Act of

9      1984, it is the judgment of the Court that Sue Taylor is

15:51:05  10     hereby committed to the Bureau of Prisons for 78 months.

11         This term consists of 60 months on Counts 1, 2, 3,

12     and 4; 12 months on Counts 5, 6, and 7, to be served

13     consecutively to Counts 1, 2, 3 and 4; and six months on Count

14     8, to be served consecutively to Counts 1, 2, 3, 4, 5, 6, and

15:51:38  15     7.

16         The defendant shall pay a special assessment of $500,

17     which shall be due immediately.

18         In light of the restitution obligation that is going

19     to be imposed, I find the defendant does not have the ability

15:51:51  20     to pay a fine and therefore order that the fine be waived.

21         The defendant shall pay restitution to the victim,

22     Internal Revenue Service, in the amount of $2,234,219, as

23     directed by the probation department.

24         While incarcerated, payment of criminal monetary

15:52:13  25     penalties will be due at a rate of not less than $25 per

15:52:16   1   quarter and shall be paid through the Bureau of Prisons Inmate

2   Financial Responsibility Program to the clerk of this court.

3        Payments should be credited to the various monetary

4   penalties imposed by the Court in the priority established by

15:52:31   5   18 United States Code Section 3612(c).  I hereby waive the

6   imposition of interest and penalties on any unpaid balance.

7        The defendant shall pay this total of $2,234,219 --

8   I'm sorry, -719 dollars in criminal monetary penalties

9   immediately, but having assessed the defendant's ability to

15:53:00   10   pay and the total criminal monetary penalties, they will be

11   due as follows:  The balance will be due in equal monthly

12   installments of $5,000 per month over a period of 32 months to

13   commence 60 days after release from incarceration to a term of

14   supervised release and to be paid in full within 90 days of

15:53:22   15   termination of the supervised release.

16        Upon release from prison, the defendant will be

17   placed on supervised release for three years.  This term

18   consists of three years on Counts 1, 2, 3, and 4; and one year

19   on Counts 5, 6, 7, and 8; all terms to run concurrently.

15:53:50   20        While on supervised release the defendant shall

21   comply with the standard conditions of supervision adopted by

22   this court in General Order 05-36.  Of particular importance

23   will be the requirement, Ms. Taylor, that you not commit

24   another federal, state, or local crime during the three year

15:54:07   25   term of supervised release and that you abstain from all use

15:54:10   1   of illegal drugs, as required by the general order.  The

2   mandatory drug testing provision will be suspended since there

3   has been no indication of illegal drug use in the past.

4          Within 72 hours of release from the custody of the

15:54:24   5   Bureau of Prisons, the defendant shall report in person to the

6   probation office in the district where the defendant is

7   released.

8          The defendant shall comply with the following

9   additional conditions.  You shall submit your person,

15:54:37  10   property, residence, office, or vehicle to a search conducted

11   by a probation officer at a reasonable time and in a

12   reasonable manner, and the search may include but is not

13   limited to computers, electronic devices and storage media.

14          You shall provide the probation officer access to any

15:54:57  15   requested financial information.  You are prohibited from

16   making major purchases, incurring new financial obligations,

17   or entering into any financial contracts without the approval

18   of the probation officer, and you shall cooperate with the

19   Internal Revenue Service and pay all tax liabilities and shall

15:55:17  20   file timely, accurate, and lawful income tax returns and

21   provide proof to the probation officer.

22          For all of the reasons previously stated, I find this

23   sentence is appropriate under 18 United States Code Section

24   3553(a).

15:55:37  25          Ms. Taylor, do you understand the sentence that has

15:55:39  1   been imposed in this case?

2            MS. TAYLOR:  I do not.

3            THE COURT:  What is it that you don't understand

4   about it?

15:55:49  5            I'm not asking if you agree with it, I'm just asking

6   if you understand what I said.

7            MS. TAYLOR:  I don't understand.

8            THE COURT:  What is it you don't understand?

9            MS. TAYLOR:  I don't understand any of it.

15:56:03  10           THE COURT:  Would you like me to restate it for you?

11           MS. TAYLOR:  I conditionally accept upon proof of

12  claim that if it ever appeared in the past I was ever

13  consenting to any of these proceedings, I did not then and do

14  not now give my consent to these proceedings.

15:56:28  15           THE COURT:  Well, to make sure you understand the

16  sentence, Ms. Taylor, I'm going to state the essentials one

17  more time, but not all of the details.

18           You are sentenced to 60 months in the Bureau of

19  Prisons on Counts 1, 2, 3, 4, all to be served concurrently.

15:56:43  20           You are sentenced to 12 months on Counts 5, 6, and 7,

21  to be served concurrently as between those three counts, but

22  consecutively to Counts 1, 2, 3, and 4.

23           And you are sentence to do six months on Count 8, to

24  be served consecutively to Counts 1 through 7.

15:57:03  25           So that will mean a 60-month count -- 60-month

15:57:05  1   sentence on the first four counts; a 12-month sentence on the

2   next three, that totals 72; and a six-month count on the last

3   one.  That totals 78, which is the sentence I have found to be

4   appropriate.

15:57:20  5           You are being placed on supervised release for three

6   years with the conditions that I described.  You are being

7   ordered to pay restitution in the amount of $2,234,219, and

8   you are being ordered to pay a $500 special assessment.

9           That is the sentence I have arrived at in this case.

15:57:42  10          I need to advise you, Ms. Taylor, that you have the

11  right to appeal.  If you decide you want to appeal the jury's

12  guilty verdict or this sentence, you will need to file a

13  Notice of Appeal within 14 days of my judgment.  My judgment

14  will probably be entered tomorrow or the next day.

15:57:59  15          That's a very important 14 days because if you miss

16  it, you lose your right to appeal.  So if you want to appeal

17  this decision within -- or to the Ninth Circuit, you need to

18  file a notice of appeal within the next 14 days just to be

19  safe.

15:58:17  20          Mr. Knapp, you said there were some other matters you

21  wanted to address.

22          MR. KNAPP:  Yes, Your Honor, just a couple of things.

23          The first one is I would like the Court to state on

24  the record, if it will, whether the Court has any concerns

15:58:31  25  that the defendant has a mental disease or defect that

15:58:35  1    interfered with her ability to face trial or represent

2    herself.  Obviously she's been through trial, she's

3    represented herself during that trial.  She had advisory

4    counsel up to last Monday.

15:58:47  5         I'm not suggesting there is anything in the record

6    that suggests the Court should have concerns, in fact I think

7    the record is probably clear, but in case any reviewing court

8    has questions, I would ask the Court to state on the record

9    based on your observation of her, your interactions, if there

15:59:01 10    were any ex parte interactions, interactions at sidebar, her

11    ability to question witnesses, present a closing argument.

12    You know, based on all that if the Court could maybe make a

13    record of its thoughts on that matter.

14         THE COURT:  Do you have other matters you want to

15:59:15 15    cover?

16         MR. KNAPP:  There are two other ones.  One is that

17    shortly before trial there was an issue -- I don't know if the

18    Court remembers, but there was an issue about getting some

19    records out of defendant's boyfriend and daughter, some trust

15:59:32 20    records.  Those were obtained by the government.  We were

21    waiting on a certification from the daughter, Desiree

22    Saunders.  She had been held in contempt by Judge Murguia last

23    fall for not turning them over.  I didn't actually get the

24    certification of the records until shortly before trial, so I

15:59:52 25    filed at Docket Number 242 a notice of compliance with the

15:59:58 1  trial subpoena and a draft order.  I can forward those to the

2  Court again.  It kind of slipped my mind during the course of

3  trial, and I just went through the docket to make sure

4  everything is wrapped up.

16:00:08 5       I do think I wanted to alert the Court to the fact

6  that Ms. Saunders did comply with the trial subpoena before

7  trial and to the extent the Court wants to purge the contempt,

8  I wanted to alert the Court to that filing.  Again Docket

9  Number 242.

16:00:22 10       THE COURT:  Are you asking that I enter the order

11  that was provided at Docket 242?

12       MR. KNAPP:  Yes, Your Honor.  I'll tell you we're not

13  completely certain that she fully complied, but she did

14  provide records and provide the certification we asked for.

16:00:40 15  So, yes, we could ask for the Court to I guess find she

16  complied with that subpoena and purge the contempt.

17       And then the third thing, Your Honor, is we do ask

18  the Court to remand the defendant into U.S. Marshal custody

19  today rather than have a self-surrender date.  I can talk

16:00:55 20  about why I make that recommendation now, or I can wait until

21  later if the Court prefers.

22       THE COURT:  No, please do so now.

23       MR. KNAPP:  Okay.  First thing I want to note is the

24  defendant's residence is, I would say, up in the air.  A

16:01:07 25  little uncertain.  As the Court heard in testimony from Agent

16:01:09  1   Votaw, he saw her coming from the Tate Road residence today,

2   this morning before court.  That's, of course, property that

3   she purported to transfer away, or according to allegations

4   during trial she never actually had.

16:01:25  5           But the bottom line is it's unclear to the extent to

6   which that's going to be any sort of permanent residence for

7   her.  Certainly she was occupying it in some fashion as of

8   today.

9           There's also a Gilbert address she's using as an

16:01:40  10  address to receive mail.  I don't really know a whole lot

11  about that.  The Pretrial Service's reports in this case

12  stated, this was back -- way back when, they stated the

13  defendant, according to her, has resided in Gilbert with her

14  daughter on Arianna Court, the address that's on a lot of her

16:02:02  15  pleadings, that she resides off and on with her boyfriend in a

16  camp trailer which he parks throughout Maricopa County.

17          As the Court's aware, and which won't be obvious from

18  the record, we didn't go forward with sentencing last Thursday

19  because defendant apparently claimed she was snowed in in

16:02:20  20  Cottonwood.  I don't know what's -- well, there's no clear

21  evidence to the government, to the Court, about where she's

22  really living.  That's troubling.  Especially in a case like

23  this where she has every incentive to flee.

24          As the Court has heard and has found, she has evaded

16:02:35  25  millions of dollars in taxes.  She has lots of assets buried

16:02:39  1   in fictitious identities.  She has every reason to flee.  She

2   doesn't want to go to prison.  No one does.

3        She didn't submit to an interview by the presentence

4   writer, so we don't have any information on that angle as to

16:02:53  5   where she truly lives and where she truly holds her assets,

6   that sort of thing.

7        That's point number one.  It's sort of uncertain

8   residence.

9        Point number two is that she has clearly very little,

16:03:05 10   if not no respect for the Court's jurisdiction and the

11   government's authority in this matter or in others.

12        I've noted in my sentencing memorandum some of the

13   things she said in pleadings.  The Court's heard for itself

14   some of the things she said today and in other occasions that

16:03:23 15   shows she has no respect for the process.  There's no reason

16   to think she's going to abide by a self-surrender date.

17        So for those two reasons principally we do ask she be

18   remanded to the custody of the US marshals.

19        I will note the release status report that I got

16:03:42 20   today notes that the pretrial services officer says that

21   defendant has been compliant with release conditions and

22   pretrial services respectfully recommends voluntary surrender

23   be permitted if a custody sentence is imposed.

24        We disagree with that for the reasons I mentioned.  I

16:04:01 25   also note in this report, as well as the one attached to it,

16:04:04   1   both times the pretrial services officer showed up for an

2   unannounced home visit and the defendant wasn't there.

3          Again, we don't know where she is and don't know how

4   to get ahold of her or track her down if she doesn't show for

16:04:17   5   a self-surrender date.  That's the reason, Your Honor.

6          THE COURT:  All right.  Does that cover all the

7   matters you wanted to raise, Mr. Knapp?

8          MR. KNAPP:  Yes, Your Honor, it does.

9          THE COURT:  All right.

16:04:25  10          Ms. Taylor, do you wish to respond to any of the

11   points Mr. Knapp just raised?

12          MS. TAYLOR:  Yes, Your Honor.  I conditionally accept

13   upon proof of claim that I have not been here for every

14   hearing that has been scheduled, I have not had addresses

16:04:45  15   where I could be found, and upon proof of claim that I can't

16   stay home 24/7 for somebody to come and visit me.  I don't

17   know when the probation officer's going to show up.  I've

18   always gotten her card, always called her back.

19          I conditionally accept upon proof of claim that I

16:05:10  20   have not been, as he says, on the lam running.

21          There's no reason to believe I would not be here for

22   sentencing if you do sentence me on a certain date.  I don't

23   see any -- I don't have a passport.  I don't have any money to

24   go anywhere.  Don't even drive.  Don't have a car.  It's very

16:05:54  25   unlikely that the defendant is going to go anywhere except

16:06:03  1    wherever you remand me.

2              THE COURT:  Okay.  Thanks, Ms. Taylor.

3              With respect to the three issues raised by the

4    government, we will enter the order at Docket 242 making clear

16:06:19  5    that there is no further contempt for Ms. Taylor's daughter.

6              I do find that Ms. Taylor is competent to proceed,

7    was competent to proceed at trial, and has been competent for

8    purposes of this sentencing hearing today.

9              During the course of trial I had a lot of interaction

16:06:41  10   with you, Ms. Taylor, and it appears to me that you are

11   intelligent, that you understand what was going on, understood

12   what was going on at the trial, that you were able to

13   represent yourself, which you chose to do.

14             I also have been of the view observing you today that

16:07:02  15   you are competent for purposes of the hearing and that you are

16   not mentally impaired in any way.

17             As to the last matter, which is the government's

18   request that you be taken into custody today, Ms. Taylor,

19   there is another statute which is relevant.  It is 18 United

16:07:17  20   States Code Section 3143(a) and it states that I am required

21   to detain a person who has been found guilty of an offense and

22   is awaiting execution of sentence, meaning the beginning of

23   the sentence, unless I can find by clear and convincing

24   evidence that the person is not likely to flee or pose a

16:07:42  25   danger to the safety of any other person or the community.

16:07:47  1        I can find by clear and convincing evidence that you

2   are not a danger to the community or any other person, but I

3   cannot find by clear and convincing evidence that you are not

4   likely to flee.

16:07:59  5        That is a high standard, clear and convincing

6   evidence.

7        You have steadfastly denied ownership of property and

8   declined to disclose your residence throughout this case.  You

9   have very recently transferred assets, including the

16:08:17 10   automobile and the property that was identified today.  It has

11   been very difficult throughout the course of this case to

12   track down where your assets were or what you were doing, so I

13   do not believe I can find by clear and convincing evidence

14   that you are not likely to flee and, as a result, I'm going to

16:08:40 15   take you into custody today.

16        The U.S. marshals are here in the courtroom today for

17   that purpose and they will take you into custody for purposes

18   of serving the sentence.

19        MS. TAYLOR:  Your Honor, I conditionally accept that

16:08:55 20   if it ever appeared in the past I ever consented to any of

21   these proceedings, I did not then and do not now give my

22   consent to these proceedings.

23        I also conditionally accept upon proof of claim that

24   I am any kind of flight risk.  I have been here for every

16:09:15 25   hearing, I have had every opportunity to leave if I wanted to.

16:09:21  1   I have not missed one hearing or one requirement from this

2   judge, from this court, and I respectfully request that I have

3   an extension at least until after Christmas.

4          THE COURT:  All right.  I understand what you have

16:09:45  5   said, Ms. Taylor, but my decision will remain the same.

6              Yes, sir?

7              It's okay, he can speak.  That's all right.

8          MR. McBRIDE:  May I speak?

9          THE COURT:  Yeah, you can say something.  You sat

16:09:58  10  through the trial.

11             I'm sorry?

12         MR. McBRIDE:  Can I do it under oath?

13         THE COURT:  No, you don't need to be under oath.

14         MR. McBRIDE:  She's absolutely right about as far as

16:10:09  15  her never being a flight risk.

16             Mr. Votaw is so far wrong it's unbelievable.  The car

17  they're talking about belonged to my church, which I made

18  arrangements four years ago to sell to her daughter upon its

19  reaching a certain mileage.  Had nothing to with Sue Taylor.

16:10:25  20             The house on Tate Avenue or Tate Mountain, whatever

21  you want to call it, belongs to Herbal Research Institute,

22  which I've been caretaker of for the last four, five, six

23  years, and I agreed with the new owners, new beneficiary of

24  that property, to finish the job that I started there, which

16:10:41  25  was the mountain caving off and I built a retaining wall,

16:10:45 1    which I haven't quite finished and I promised them I would

2    complete the work there that needed to be done before leaving

3    that facility.

4         And while in the local area, that's where we stayed.

16:10:56 5    That's why he saw us there.  And as caretaker of the property,

6    that's the only reason I was there.  And Ms. Taylor was there

7    with me.

8         THE COURT:  Sir, I'm sorry, I've forgotten your name.

9         MR. McBRIDE:  Ron.

16:11:09 10        THE COURT:  Ron McBride; is that right?

11        MR. McBRIDE:  Yes.

12        THE COURT:  Okay, Mr. McBride.

13        MR. McBRIDE:  I'm the pastor of Burning Bush

14   Ministries and McBride Musical Ministries, which he claims

16:11:20 15   doesn't exist.  He's been invited to come to church when we're

16   holding services.  Never showed up.  But they've done

17   everything they can to bring that to a hault, and that church

18   is going to continue.  Just like she will.

19        THE COURT:  All right.  Thank you, Mr. McBride.  I

16:11:36 20   understand the points you've made.  My decision is not based

21   solely upon what we heard from Agent Votaw today but also what

22   I saw during the course of trial concerning what I've

23   described about efforts to hide residence and assets, but I

24   understand what you've said.

16:11:54 25        All right.  We'll stand in adjournment.  Thank you.

16:11:56   1            MS. TAYLOR:  Your Honor, that still does not make me

        2   a flight -- that does not make me a flight risk.  What proof

        3   do you have that I'm a flight risk?

        4            THE COURT:  I don't need proof that you are.  My

16:12:07   5   conclusion is there is not clear and convincing evidence you

        6   are not, and that's the reason for my decision.  So we'll go

        7   forward.  Thank you.

        8            MS. TAYLOR:  I conditionally do not accept your

        9   offer.

16:12:20  10            (End of transcript.)

       11                         *  *  *  *  *

       12

       13

       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25

# **C E R T I F I C A T E**

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 7th day of December, 2011.

s/ Patricia Lyons, RMR, CRR
Official Court Reporter